UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cr-00240-MOC-DSC

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **)** | |
| | **)** | |
| | **)** | |
| | **)** | |
| Vs. | **)** | ORDER |
| | **)** | |
| **TONY DESHAWN MCCOY,** | **)** | |
| | **)** | |
| Defendant. | **)** | |

**THIS MATTER** is before the Court on defendant's Motion to Suppress. Having considered defendant's motion and conducted an evidentiary hearing, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

I.      **Background**

The credible testimony at the hearing revealed the following information. Officer Caleb Skipper and Officer Brandon Sinnot both testified as to the events leading up to the stop of defendant, the search of his person, the discovery of the firearm, and defendant's arrest.

That testimony revealed that on November 4, 2016, Officers Skipper and Sinnot of the Charlotte-Mecklenburg Police Department ("CMPD") Metro Crime Reduction Unit were riding as a two-man unit in a marked CMPD vehicle. Officers Skipper and Sinnot were parked near the intersection of W. 28th Street and Bancroft Street in Charlotte, N.C. At approximately 1:10pm, the Officers observed a silver Buick traveling with a cracked front windshield, a license plate they believed was invalid or had faded numbers, and the driver was not wearing a seatbelt. Based on

1

these observations, the Officers initiated a traffic stop of the silver Buick. Both Officers then activated their respective body cameras.

Once the silver Buick stopped, Officer Skipper approached the driver's side of the vehicle. Officer Skipper observed that the driver (later identified as the Defendant Tony Deshawn McCoy) had both hands on the steering wheel and the windows were rolled up. As Officer Skipper approached, the Defendant lifted his right hand from the steering wheel and motioned for Officer Skipper to open the driver's side door. Officer Skipper then opened the driver's side door to communicate with the Defendant. Officer Skipper collected the Defendant's driver's license and a purchase receipt for the vehicle. The Defendant advised Officer Skipper that the Defendant's mother had recently purchased the vehicle. When Officer Skipper opened the driver's side door to communicate with the Defendant, he immediately smelled an odor of marijuana coming from inside the vehicle.

While Officer Skipper was communicating with the Defendant, Officer Sinnot approached the passenger side door of the silver Buick. As Officer Sinnot approached the vehicle, he began communicating with a female seated in the passenger seat. The passenger side window was partially down and Officer Sinnot smelled an odor of marijuana coming from inside the vehicle.

After collecting the Defendant's information, Officer Skipper walked back to the CMPD vehicle. While walking back to the CMPD vehicle, Officer Skipper signaled to Officer Sinnot that he detected an odor of marijuana by tapping on his nose. Officer Skipper then checked for any outstanding warrants and ran the vehicle identification number through the Department of Motor Vehicles database. The search revealed that the Defendant had a valid driver's license and no outstanding warrants. A search of the National Crime Information Center ("NCIC") database

revealed the Defendant's criminal history, which included two convictions for Robbery with a Dangerous Weapon, among others.

Officer Skipper then approached the silver Buick a second time to return the Defendant's driver's license and purchase receipt and to address the smell of marijuana. Officer Skipper asked the Defendant to step out of the vehicle. Once the Defendant stepped out of the vehicle, the Defendant admitted that he had marijuana in his possession. Officer Skipper then advised the Defendant that he had already detected an odor of marijuana.

Officer Skipper then placed the Defendant in handcuffs and conducted a brief pat down of the Defendant's person. Officer Skipper retrieved the marijuana from the Defendant's front left pants pocket. The marijuana was packaged in six individually packaged baggies inside one larger clear baggy. As Officer Skipper continued the pat down, he felt a hard object concealed in the Defendant's front waistband. Officer Skipper asked the Defendant what the object was and the Defendant replied that the object was a "gun." Officer Skipper then retrieved the firearm—a Smith & Wesson Revolver, .38 Special. The Defendant was then placed under arrest.

The Officers then conducted a search of the vehicle and located a digital scale in the glove compartment. The search also revealed an additional baggy of marijuana located in the handbag belonging to the female passenger. The Defendant advised the Officers that the marijuana found in the handbag belonged to him, not the female passenger.

On August 15, 2017, a grand jury returned a one-count indictment against the Defendant charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Indictment (#1).

## II.     The Motion to Suppress

In moving to suppress, defendant contends that Officer Skipper's stop of his vehicle was unreasonable and unsupported by a reasonable articulable suspicion.  Further, defendant contends that Officer Skipper failed to harbor any reasonable articulable suspicion that defendant was either armed or dangerous before he conducted the frisk.

## III.     Discussion

A traffic stop constitutes a "seizure" under the Fourth Amendment and is subject to review for reasonableness. United States v. Williams, 808 F.3d 238, 245 (4th Cir. 2015). To be constitutional, a traffic stop must be reasonable under the Fourth Amendment, Whren v. United States, 517 U.S. 806, 810 (1996), making those stops subject to the standard articulated by the Supreme Court in  Terry v. Ohio, 392 U.S. 1 (1968).  "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure'" under the Fourth Amendment to the United States Constitution.  Whren, 517 U.S. at 809  To satisfy the reasonableness requirements for an investigative detention, a traffic stop must be legitimate at its inception, and the officers' actions during the stop must, thereafter, be "reasonably related in scope" to the basis for the stop. Williams, *supra*.   Based on the evidence presented at the suppression hearing, which included officer body cam footage, the Court answers both questions in the affirmative.

### A.  Whether the Stop was Legitimate at Its Inception

In determining whether a stop is reasonable under Terry, this Court first asks whether the stop was "legitimate at its inception." United States v. Hill, 852 F.3d 377, 381 (4th Cir. 2017). Here, defendant argued that the initial stop was not reasonable because the offenses upon which the stop were predicated were mere infractions of North Carolina law and were a pretext for

looking for greater offenses, such as gun and drug violations.  An officer's initial "decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  Whren, 517 U.S. at 810.   The officer's subjective motivation in making the stop is unimportant; it only matters whether the basis for the stop was objectively reasonable. Whren, 517 U.S. at 813.

The Court has, as promised at the conclusion of the hearing, given close consideration to defendant's argument that the stop of his vehicle was pretextual.  While Whren clearly forecloses the subjective analysis suggested by defendant, the Court believes that consideration of the case law leading up to Whren will add some clarity. Prior to Whren, there was a split among the federal circuit courts in considering whether investigatory stops were improperly pretextual: some circuits applied a subjective test, while others applied an objective one.   Before Whren, the Eleventh Circuit found that

> in determining when an investigatory stop is unreasonably pretextual, the proper inquiry ... is not whether the officer could validly have made the stop but whether under the same circumstances a reasonable officer would have made the stop in the absence of the invalid purpose.

United States v. Valdez, 931 F.2d 1448, 1450 (11th Cir. 1991) (citation and corresponding quotation marks omitted). The Tenth Circuit held that a stop is "unreasonable not because the officer secretly hope[s] to find evidence of a greater offense, but because it [i]s clear that an officer would have been uninterested in pursuing the lesser offense absent that hope." United States v. Guzman, 864 F.2d 1512, 1517 (10th Cir.1988) (citation and corresponding quotation marks omitted).  At the hearing, defendant's argument followed closely the reasoning of the Guzman court.

While the reasoning of Guzman was appealing as it touched on concepts of fairness and prevention of arbitrary use of policing authority, that method of subjective analysis was soundly rejected by the Fourth Circuit, holding as follows:

> We adopt the objective test and likewise hold that when an officer observes a traffic offense or other unlawful conduct, he or she is justified in stopping the vehicle under the Fourth Amendment. Such a limited detention does not become "unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity." *Cummins*, 920 F.2d at 499–501 (noting that the officer testified he probably would not have stopped the car if the defendant and his passenger had not continued glancing at him and behaving suspiciously).
>
> Although we share the concerns, expressed by the Tenth and Eleventh Circuits [in Guzman and Valdez], of the arbitrary exercise of police powers, we conclude that the objective test presents the most principled basis upon which to analyze the validity of investigative stops. We further conclude that the test is most in keeping with the repeated admonitions of the Supreme Court that Fourth Amendment violations turn "on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time ... and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon*, 472 U.S. 463, 470, 105 S.Ct. 2778, 2782, 86 L.Ed.2d 370 (1985) (*quoting Scott v. United States*, 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978)); *see United States v. Villamonte–Marquez*, 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983).

United States v. Hassan El, 5 F.3d 726, 730-731 (4th Cir. 1993). The Fourth Circuit's and other circuits' objective approach was soon thereafter adopted as the appropriate approach by the Supreme Court in Whren, supra.

Here, the evidence presented at the hearing shows that the vehicle stop was supported by probable cause. The fact that the traffic offenses were infractions or that the officers were looking for more serious offenses is of no consequence under Whren. While it turned out that the tag turned out to be valid, that later discovered fact did nothing to diminish the fact that the officers had probable cause to initiate the traffic stop as they reasonably believed there was a problem with the tag, that the windshield was broken, and that defendant was not wearing a seatbelt. The Court

found the officers' testimony and evidence presented, including body cam footage, to be highly credible and informative.  Thus, the stop was legitimate at its inception.

**B. The Scope of the Officers' Action After the Stop**

The next issue is whether "the officer's actions during the seizure were reasonably related in scope to the basis for the traffic stop." Williams, 808 F.3d at 245 (internal quotation marks omitted).  The credible evidence presented at the hearing showed that when the vehicle was stopped and Officer Skipper made his initial approach and engaged the driver, he detected the odor of marijuana coming from the vehicle.  He testified that the odor he smelled was not that of burning marijuana, but of unused marijuana.  After going back to the patrol car to run defendant's driver's license and registration information, he discovered defendant was a felon.  Officer Skipper then returned to the car to return the defendant's driver's license and purchase receipt and to address the smell of marijuana. Officer Skipper asked the Defendant to step out of the vehicle. Once the Defendant stepped out of the vehicle, the Defendant admitted that he had marijuana in pants pocket, and Officer Skipper then advised the Defendant that he had already detected an odor of marijuana. Officer Skipper then placed the Defendant in handcuffs and conducted a brief pat down of the Defendant's person. Officer Skipper retrieved the marijuana from the Defendant's front left pants pocket. The marijuana was packaged in six individually packaged baggies inside one larger clear baggy. Immediately after retrieving the marijuana, Officer Skipper frisked defendant and found a hard object in defendant's waist band, which defendant identified as a hand gun. Officer Skipper then removed the weapon. Defendant has moved to suppress the firearm discovered on his person pursuant to the frisk, arguing that such discovery exceeded the permissible scope of the stop.

If an officer smells the odor of marijuana in circumstances where the officer can localize its source to a person, the officer has probable cause to believe that the person has committed or is committing the crime of possession of marijuana. United States v. Humphries, 372 F.3d 653, 659 (4th Cir. 2004). Further, admission to the possession of an illegal drug can provide a law enforcement officer with probable cause to arrest and a lawful basis to search the arrestee. United States v. Day, 591 F.3d 679, 696 (4th Cir. 2010). During a traffic stop, officers may also require a driver to exit a vehicle based on the suspicion justifying the traffic stop itself. Maryland v. Wilson, 519 U.S. 408, 415 (1997). A brief pat down is permitted "when the officer perceive[s] an appropriate level of suspicion of criminal activity and apprehension of danger." United States v. Sakyi, 160 F.3d 164, 169 (4th Cir. 1998). When determining whether an officer had reasonable suspicion to conduct a frisk, a court must consider the totality of the circumstances. United States v. Sprinkle, 106 F.3d 613, 618 (4th Cir. 1997).

An officer may conduct a protective frisk of a car's driver or passenger if he or she "harbor[s] reasonable suspicion that the person subjected to the frisk is armed and dangerous." Arizona v. Johnson, 555 U.S. 323, 326 (2009). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27. "The reasonable suspicion standard is an objective one, and the officer's subjective state of mind is not considered." United States v. George, 732 F.3d 296, 299 (4th Cir. 2013) (citing United States v. Powell, 666 F.3d 180, 186 (4th Cir. 2011)). The Fourth Amendment does not "require . . . police officers [to] take unnecessary risks in the performance of their duties." Terry, 392 U.S. at 23. The danger justifying a protective frisk arises from the combination of a forced police encounter and

8

the possible presence of a weapon. See Adams v. Williams, 407 U.S. 143, 146 (1972); Michigan v. Long, 463 U.S. 1032, 1052 n.16 (1983).

In finding that the frisk leading to the discovery of the firearm was lawful, the Court has considered all the circumstances of the encounter and determined that Officer Skipper had a particularized and objective basis for believing that the detained suspect might be armed and dangerous. United States v. Arvizu, 534 U.S. 266, 273 (2002). "A host of factors can contribute to a basis for reasonable suspicion, including the context of the stop, the crime rate in the area, and the nervous or evasive behavior of the suspect." George, 732 F.3d at 299. While the both officers testified that defendant was cooperative, that testimony also revealed that: from his check of the driver's license he knew that defendant was a felon; he smelled marijuana upon the initial encounter; defendant admitted to being in possession of marijuana when he was returning the license and registration document; and he had just discovered marijuana in defendant's pants pocket.

While a mere traffic infraction and knowledge that a person has a criminal record is not enough to give rise to a reasonable suspicion that a defendant is armed and dangerous, Powell, 666 F.3d at 189, the frisk of defendant was immediately preceded by Officer Skipper's discovery of marijuana in defendant's pants pocket. Discovery of a controlled substance supports the frisk for officer safety as the Fourth Circuit has held that the presence of drugs permits a reasonable inference of the presence of firearms. United States v. Sullivan, 455 F.3d 248, 260 (4th Cir.2006) (recognizing the "unfortunate reality that drugs and guns all too often go hand in hand") (citation omitted); United States v. Stanfield, 109 F.3d 976, 984 (4th Cir.1997) ("As we have often noted, where there are drugs, there are almost always guns."); United States v. Perrin, 45 F.3d 869, 873 (4th Cir.1995) (finding reasonable an officer's belief that a person selling drugs may be carrying a

weapon for protection); and  United States v. Brown, 398 Fed. Appx. 865, 868 (4th Cir. 2010) ("This court has recognized that the presence of drugs permits the inference of the presence of firearms."). Thus, Officer Skipper's frisk which lead to the discovery of the gun, which immediately followed the discovery of marijuana in defendant's pants pocket, is supported by objective and particularized facts sufficient to give rise to a reasonable suspicion that defendant was armed and dangerous.

Finally, the Court concludes that the investigation related to the marijuana and discovery of the firearm did not impermissibly prolong the encounter on the traffic infractions. Officers may engage in other investigative techniques unrelated to the underlying traffic infraction or officer safety while diligently pursuing the purpose of the traffic stop. Rodriguez v. United States, ___U.S.___, 135 S.Ct. 1609, 1614-15 (2015). So long as the collateral investigation does not prolong the encounter, such activity is permissible. Id. The credible evidence of record indicates that Officer Skipper smelled marijuana upon his initial encounter with defendant and it was defendant who volunteered that he had marijuana in his possession when Officer Skipper was returning his license and registration documents. Indeed, the body cam footage fully supports that testimony and has shown clearly that the marijuana investigation was conducted simultaneously with the investigation of the traffic infractions. Thus, the discovery of the firearm and actions leading up to that discovery were reasonably related in scope to the basis for the traffic stop. Williams, 808 F.3d at 245.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Suppress (#12) is **DENIED.**

Signed: March 2, 2018

Max O. Cogburn Jr.
United States District Judge